**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE   :   No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                :   No. 1:14-cv-04391 (VSB)
                                            :
_This Relates to the Indirect-Purchaser Actions_   x

## THE INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.   INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND .......................................................................................................... 2

   A.   The History of Settlement Negotiations ................................................................. 5

III. MATERIAL TERMS OF THE PROPOSED SETTLEMENT ........................................... 6

   A.   Monetary Relief ..................................................................................................... 6

      1.   The Settlement Amount ................................................................................. 6

      2.   Release .......................................................................................................... 7

IV. THIS COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED
     SETTLEMENT ............................................................................................................ 7

   A.   The Proposed Settlement Clearly Meets the Standards for Preliminary Approval .......... 7

   B.   The Settlement Is Presumptively Fair ................................................................... 10

      1.   The Proposed Settlement Is Procedurally Fair Because
         It Was Achieved Through Extensive Arm's-Length Negotiation
         with Assistance from an Experienced Mediator ............................................. 10

      2.   The Complexity, Expense and Likely Duration
         of the Litigation (*Grinnell* Factor # 1) ......................................................... 11

      3.   The Stage of the Proceedings and the Amount of
         Discovery Completed (*Grinnell* Factor # 3) .................................................. 12

      4.   The Risks of Establishing Liability and Damages (*Grinnell* Factors ## 4, 5) ........... 13

      5.   The Risks of Maintaining a Class Through Trial (*Grinnell* Factor # 6) ................... 14

      6.   Keurig's Ability to Withstand a Greater Judgment (*Grinnell* Factor # 7) ............... 15

      7.   The Range of Reasonableness of the Settlement Amount in Light of the Possible
         Recovery and Attendant Risk of Litigation (*Grinnell* Factors ## 8, 9) ................ 16

      8.   The Additional Rule 23(e)(2) Factors Support Preliminary Approval ..................... 18

        a)   Rule 23(e)(3)(A) – Plaintiffs and Settlement Class Counsel
           Have Adequately Represented the Settlement Class ................................. 18

        b)   Rule 23(e)(2)(C) – the Monetary Relief Is Adequate, Taking into Account
           the Costs and Risks of Litigation and All Other Relevant Factors ............... 18

        c)   Rule 23(e)(2)(C)(ii) – Effectiveness of Any Proposed
           Method of Distributing Relief to the Class ............................................... 19

        d)   Rule 23(e)(2)(C)(iii) – the Terms of Any Proposed Award of Attorneys' Fees ........ 22

        e)   Rule 23(e)(2)(C)(iv) – Any Agreement Required to Be
           Identified Under Rule 23(e)(3). .............................................................. 22

   f) Rule 23(e)(2)(D) – the Settlement Treats Class Members
    Equitably Relative to Each Other ................................................................ 23

V. CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ......................... 23

 A. The Settlement Class Meets the Requirements of Rule 23(a) ......................... 23

  1. Settlement Class Members Are So Numerous that Joinder Is Impracticable ............. 24

  2. There Are Questions of Law and Fact Common to All Settlement Class Members .. 24

  3. Plaintiffs' Claims Are Typical of Those of the Settlement Class .............................. 25

  4. The Settlement Class Is Fairly and Adequately Represented .................................... 26

 B. The Settlement Class Meets the Requirements of Rule 23(b)(3) .................... 26

  1. Common Questions of Law and Fact Predominate .................................................... 26

  2. A Class Action Is the Superior Method for Resolving This Case ............................. 27

 C. The Court Should Appoint Interim Co-Lead Counsel as Settlement Class Counsel ........ 28

VI. THE PROPOSED MANNER OF NOTICE IS THE BEST
  NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES .................................... 29

VII. THE FORMS OF NOTICE ARE REASONABLE ........................................................ 31

VIII. THE COURT SHOULD APPOINT JUDGE FARNAN AS SPECIAL MASTER ......... 31

IX. CONCLUSION ................................................................................................................ 32

## **TABLE OF AUTHORITIES**

## **CASES**

**Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) .......................................................17

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)...............................................................................27, 28

*In re Am. Int'l Grp. Inc. Sec. Litig,*
  689 F.3d 229 (2d Cir. 2012).................................................................23, 27

*All Indirect Purchaser Actions v. Infineon Techs. AG*
*(In re Dynamic Random Access Memory Antitrust Litig.)*
  No. M-02-1486-PJH, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013).......................24

*In re Austrian and German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom.,*
  *D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir. 2001)..........................................10

*Beltran, et al., v. InterExchange, Inc., et al.,*
  No. 1:14-cv-03074-CMA-KMT, 2019 WL 3496692 (D. Colo. Aug. 1, 2019).......................20

*Bourlas v. Davis Law Assocs.,*
  237 F.R.D. 345 (E.D.N.Y. 2006) ............................................................... 9

*In re Buspirone Patent Litig.,*
  210 F.R.D. 43 (S.D.N.Y. 2002) .......................................................24, 26, 27

*Cardiology Assocs., P.C., v. Nat'l Intergroup, Inc.,*
  No. 85 CIV 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ....................... 14

*Chhab v. Darden Rests., Inc.,*
  No. 11 Civ. 8345 (NRB), 2016 WL 300451 (S.D.N.Y. May 20, 2016)..................27

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) .................................................... *passim*

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013)....................................................................15

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995)......................................................24

*In re Currency Conversion Fee Antitrust Litig.,*
  224 F.R.D. 555 (S.D.N.Y. 2004)..................................................28

*In re Currency Conversion Fee Antitrust Litig.*,
 No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ...........................................8, 9

*Davis v. J.P. Morgan Chase & Co.*,
 775 F. Supp. 2d 601 (W.D.N.Y. 2011) ..................................................................................25

*Denney v. Deutsche Bank AG*,
 443 F.3d 253 (2d Cir. 2006) ...............................................................................................18

*In re Disposable Contact Lens Antitrust*,
 329 F.R.D. 336 (M.D. Fla. 2018)..........................................................................................24

*In re Elec. Books Antitrust Litig.*,
 No. 11 MD 2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ..........................25, 28

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
 No. 05-cv-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................19

*In re Facebook, Inc.*,
 343 F. Supp. 3d 394 (S.D.N.Y. 2018) ...................................................................................20

*Fleisher v. Phoenix Life Ins. Co.*,
 No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ...................................16

*Garland v. Cohen & Krassner*,
 No. 08-CV-4626 (KAM), 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011)................................14

*Gay v. Tri-Wire Eng'g Solutions, Inc.*,
 12-cv-2231 (KAM)(JO), 2014 WL 28640 (E.D.N.Y. Jan. 2, 2014)........................................17

*In re Gilat Satellite Networks, Ltd.*,
 No. 02-cv-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ..............................................21

*In re Global Crossing Sec. and ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................12, 21

*In re GSE Bonds Antitrust Litig.*,
 414 F. Supp. 3d 686 (S.D.N.Y. 2019) .........................................................................9, 12, 13

*Handschu v. Special Servs. Div.*,
 787 F.2d 828 (2d Cir. 1986) ...............................................................................................30

*Holt, et al., v. Murphy Oil USA*,
 17-cv-00911-RV-HTC, ECF No. 24 (N.D. Fla. Mar. 18, 2019) ............................................30

*In re Initial Pub. Offering Sec. Litig.,*
   243 F.R.D. 79 (S.D.N.Y. 2007) ..................................................................9

*In re Initial Pub. Offering Sec. Litig.,*
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)........................................................21

*In re J.P. Morgan Stable Value Fund ERISA Litig.,*
   No. 12-CV-2548 (VSB), 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) .................................22

*Katz v. ABP Corp.,*
   No. 12-CV-04173 (ENV) (RER), 2014 WL 4966052 (E.D.N.Y. Oct. 3, 2014) ....................30

*Langan v. Johnson & Johnson Consumer Companies, Inc.,*
   No. 3:13-cv-01471, ECF No. 188 (Unpublished Order) (D. Conn. Feb. 4, 2019) .................30

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
   327 F.R.D. 483 (S.D.N.Y. 2018) ...............................................................23

*In re Lloyd's Am. Trust Fund Litig.,*
   96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)....................................22

*In re Lupron Mktg. & Sales Practices Litig.,*
   228 F.R.D. 75 (D. Mass. 2005) ...................................................................25

*In re Marsh ERISA Litig.,*
   265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................22

*Mayhew v. KAS Direct, LLC,*
   No. 16 cv 6981 (VB), 2018 WL 3122059 (S.D.N.Y. June 26, 2018).......................................24

*McLaughlin v. IDT Energy,*
   No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627 (E.D.N.Y. July 30, 2018) .......................17

*In re Medical X-Ray Film Antitrust Litig.,*
   CV-93-35904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ................................................5, 22

*In re Metlife Demutualization Litig.,*
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................17

*In re NASDAQ Mkt.-Makers Antitrust Litig.,("NASDAQ I")*
   176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................2, 8, 10

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
   187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................12, 14

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  No. 94 CIV. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ....................................21

*New York by Vacco v. Reebok Int'l*,
  903 F. Supp. 532 (S.D.N.Y. 1995)........................................................................................30

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) ..............................................................................11, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .........................................................................................16, 19

*In re Petrobras Sec. Litig.*
  862 F.3d 250 (2d Cir. 2017)...............................................................................................26, 27

*In re Platinum & Palladium Commodities Litig.*,
  No. 10cv3617, 2015 WL 4560206 (S.D.N.Y. July 7, 2015) ....................................................22

*In re Playmobil Antitrust Litig.*,
  35 F. Supp. 2d 231 (E.D.N.Y. 1998) .......................................................................................25

*In re Pokémon Go Nuisance Litigation*,
  Case No. 3:16-cv-04300, ECF No. 131 (N.D. Cal. May 2, 2019)...........................................30

*In re Rail Freight Fuel Surcharge Antitrust Litig*,
  934 F.3d 619 (D.C. Cir. 2019) .................................................................................................15

*Roes v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) .................................................................................................30

*Schneider v. Chipotle Mexican Grill, Inc.*,
  No. 16-cv-02200-HSG, 2020 WL 511953 (N.D. Cal. Jan 31, 2020) .......................................30

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)..........................12

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011).....................................................................................................25

*In re Sumitomo Copper Litig.*,
  182 F.R.D. 85 (S.D.N.Y. 1998) ...............................................................................................25

*Sykes v. Mel Harris & Assocs., LLC*,
  09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ..........................................17

*Townsend v. G2 Secure Staff, L.L.C., et al.*,
  Case No. 18STCV04429 (unpublished order) (Cal. Super. Ct. L.A. Cnty July 7, 2020)..........20

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)....................................................................................................26

*In re U.S. Foodservice Inc., Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)...........................................................................................26

*Virgin Atl. Airways v. British Airways Plc*,
  257 F.3d 256 (2d Cir. 2001)...........................................................................................12

*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002)........................................................................................27

*In re Vitamin C Antitrust Litig.*,
  No. 06-MD-1738 (BMC), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .................. 11-12, 15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).................................................................................................18, 24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................................... 8, 12, 14, 29

*Warciak v. One, Inc.*,
  No. 2018-CH-06254, 2018 Ill. Cir. LEXIS 9002 (Ill. Cir. Ct. Oct 3, 2018)...........................30

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)...........................................................................................25

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)..................................................................................14

*In re WorldCom Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................................19

## STATUTES & RULES

Clayton Act, 15 U.S.C. § 14  ...........................................................................................3

Federal Rules of Civil Procedure
  23...........................................................................................................................9
  23(a) ...............................................................................................................23, 24, 25
  23(b)......................................................................................................................23
  23(b)(3)..............................................................................................................26, 29
  23(c)...............................................................................................................28, 30

23(e) ............................................................................................................................... 1
23(e)(1) ......................................................................................................................... 28
23(e)(2) .................................................................................................................. *passim*
23(f) ......................................................................................................................... 11, 15
23(g) ............................................................................................................................ 28
Rule 23 Advisory Committee Note (2018) ....................................................... 19, 22

Sherman Act, 15 U.S.C. §§ 1 and 2 .................................................................... 3

**<u>OTHER AUTHORITIES</u>**

Manual for Complex Litigation (Fourth) § 21.63 (2004). ............................... 7

/809768

## I.   **INTRODUCTION**

After more than six years of litigation, extensive discovery, and many months of vigorous, arm's-length settlement negotiations, the Indirect Purchaser Plaintiffs[1] ("Plaintiffs") have negotiated a settlement with defendant Keurig Green Mountain, Inc. ("Keurig") on behalf of themselves and proposed Settlement Class Members for $31 million memorialized in a Stipulation of Settlement and Release, executed August 14, 2020 (the "Agreement").[2]   In exchange, Plaintiffs and Settlement Class Members will, among other things, release Keurig from the claims alleged in the Complaint.  The Agreement was achieved following extensive and vigorous negotiations with the assistance of a seasoned mediator, former U.S. District Court Judge Joseph J. Farnan Jr. ("Judge Farnan").  The Settlement Amount was recommended by Judge Farnan after he held a day-long mediation session and then facilitated months of further negotiations.  During the mediation, the parties explored and discussed in depth issues of liability and damages before accepting Judge Farnan's recommendation.

Plaintiffs respectfully submit this memorandum of law and accompanying Declarations of Robert N. Kaplan, sworn to September 25, 2020 ("Kaplan Decl." or "Kaplan Declaration"), Judge Farnan, sworn to September 10, 2020 ("Farnan Decl." or "Farnan Declaration"), and Gina M. Intrepido-Bowden, sworn to September 30, 2020 ("Intrepido-Bowden Decl." or "Intrepido-Bowden Declaration") pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to demonstrate that the Court should: (a) preliminarily approve the proposed settlement between

---

[1] The Indirect Purchaser Plaintiffs are Wasif Bala, Yelda Mesbah Bartlett, Lavinia Simona Biasell, Linda Bouchard, Bouchard & Sons Garage, Inc., Luke Cuddy, Jonna Dugan, Erin Dunbar, Larry Gallant, Denise Gilmore, Patricia Hall, Jennifer Harrison, Teena Marie Johnson, Lori Jo Kirkhart, Kori Lodi, Vivid Hair Studio LLC, Wauneta Dibbern, John Lohin, Angus Macdonald, Edgar Medina, Jennifer Mileikowsky, Brier Miller Minor, David W. Nation, Patricia J. Nelson, Julie Rainwater, Betty Ramey, Lauren Jill Schneider, Shirley Anne Schroeder, Jason and Amy Stratman, and Toni Williams.

[2] Capitalized terms here have the same meaning here as in the Agreement.  The Agreement is attached to as Exhibit 1 to the Kaplan Declaration (defined herein).

Plaintiffs and Keurig as memorialized in the Agreement subject to later final approval; (b) certify a Settlement Class for the purposes of settlement only; (c) appoint Plaintiffs as Settlement Class Representatives; (d) appoint Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Pearson, Simon & Warshaw, LLP ("Pearson Simon"), and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Settlement Class Counsel; (e) appoint JND Legal Administration ("JND") as claims administrator;[3] (f) appoint Signature Bank N.A. as escrow agent; (g) approve the program for notice (the "Notice Plan") described in and attached to the Intrepido-Bowden Declaration as Exhibit B and order that notice be disseminated to the Settlement Class as described therein; and (h) appoint Judge Farnan as a Special Master to make recommendations to the Court regarding the settlement, notice, and allocation program.

Under established principles of law, the proposed Settlement Class, as well as the proposed notice and plan for distribution described below, qualify for approval. For preliminary approval, the Court need only determine whether, on its face, the proposed settlement is "at least sufficiently fair, reasonable, and adequate to justify notice to those affected and an opportunity to be heard" or, put another way, whether the settlement is within the range of possible approval. *In re NASDAQ Mkt. Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ I*").

## II.   **BACKGROUND**

On March 24, 2014, the first of nine indirect purchaser actions were filed against Keurig alleging that it had monopolized or attempted to monopolize and restricted, restrained, foreclosed, and excluded competition in order to raise, fix, maintain, or stabilize the prices of Keurig K-Cup Portion Packs at artificially high levels in violation of Sections 1 and 2 of the

---

[3] JND, a well-respected administrator, is described more fully in Section IV below.

Sherman Act, 15 U.S.C. §§ 1 and 2, Section 3 of the Clayton Act, 15 U.S.C. § 14, and various state antitrust, unfair competition, consumer protection, unjust enrichment, and other laws.

Keurig manufactures, distributes, and sells single-serve brewers and Keurig K-Cup Portion Packs.  Prior to September 2012, Keurig held certain patents covering single-serve portion packs compatible with Keurig brewers.  Upon expiration of some of these patents, Keurig allegedly engaged in anticompetitive conduct to preserve an illegal monopoly over Keurig K-Cup Portion Packs that harmed indirect purchasers.  Specifically, the Complaint alleges that Keurig's anticompetitive conduct ranged from conspiring with horizontal competitors in the coffee roasting business, engaging in extensive contracts that restrained trade throughout the supply and distribution chain, and tying sales of its Keurig K-Cup Portion Packs to sales of its single-serve brewers, thereby maintaining an illegal monopoly.  Plaintiffs alleged that Keurig's anticompetitive conduct has limited, foreclosed, and harmed competitors, resulting in supra-competitive prices to, and limited choices for, indirect purchasers.

Plaintiffs, by and through their counsel and other contributing attorneys, have diligently prosecuted the Actions.  Plaintiffs have filed three consolidated class action complaints, which pleaded detailed allegations containing claims under both federal and state antitrust laws.  ECF Nos. 61, 238, 631.  Following extensive briefing on a motion to dismiss involving complex issues of federal antitrust laws and laws of 23 states and the District of Columbia, the Court granted Defendant's motion to dismiss claims under federal antitrust law; denied, in whole or in part, the motion as to 21 states and the District of Columbia; and deferred ruling on the issue of a Vermont national class.  ECF No. 581.  After this ruling, Plaintiffs filed their Third Amended Complaint realleging violations of federal antitrust laws along with violations of the laws of 25 states and the District of Columbia.  ECF No. 631.  After an earlier ruling on the motions to

3

dismiss in the Related Actions,[4] Plaintiffs engaged in extensive, coordinated discovery with four other plaintiff groups.  Plaintiffs' counsel gathered, reviewed, and produced documents from all Plaintiffs; reviewed millions of documents produced by the parties in the Related Actions and numerous non-parties; and took or participated in, and reviewed the transcripts of over one hundred depositions across the Related Actions.   Indeed, at the time of the settlement-in-principle, fact discovery had been completed.

Plaintiffs worked efficiently and conserved the resources of the parties by working collaboratively with four other plaintiff groups while pursuing and protecting the Settlement Class' interests.   This hard-fought litigation, unlike many private antitrust cases, was not precipitated by, nor prosecuted alongside, a government action, but rather it was privately investigated and prosecuted, leading to the proposed settlement.   If the settlement is not preliminarily approved, the next steps will be expert discovery, including the exchange of expert reports, expert depositions, and any *Daubert* motions; class certification; dispositive motions; and trial.

The Settlement Amount, $31,000,000, is substantial, and Defendant has agreed that there will be no reversion of the Settlement Amount to Keurig for opt-outs or failures to submit proofs of claim.  Thus, unlike some other settlements, if the Agreement is finally approved, no part of the $31,000,000 will revert to Keurig.  If there are any uncashed checks or amounts remaining in the Fund after Settlement Awards are issued to Settlement Class Members, Plaintiffs propose that money will be distributed *cy pres* to Consumer Reports, an independent, nonprofit

---

[4] Plaintiffs coordinated their discovery efforts with competitor plaintiffs JBR, Inc. (d/b/a Rogers Family Company) and TreeHouse Foods Inc., Bay Valley Foods, LLC and Sturm Foods Inc., as well as with the Direct Purchaser Plaintiffs, and McLane Company Inc., all of whose actions were coordinated with Plaintiffs' actions in this Court for pretrial purposes under the caption *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, No. 1:14-md-02542 (VSB), No. 1:14-mc-02542 (VSB) (the "Related Actions").

organization that works side by side with consumers to create a safe, fair, and transparent marketplace.[5]

The Agreement mitigates risk by providing an immediate and certain substantial monetary recovery. The Settlement Class is no longer placing its eggs in the risky basket of continued litigation. *See In re Medical X-Ray Film Antitrust Litig.*, CV-93-35904, 1998 WL 661515, at *4 (E.D.N.Y. Aug. 7, 1998) ("In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation."). In addition, the Settlement Class does not face continued substantial expert costs.

### A.     The History of Settlement Negotiations

The settlement came about through extensive, lengthy, arm's-length negotiations that lasted months and included numerous individual and joint meetings with a respected mediator, Judge Farnan. While cordial and professional, the negotiations were also challenging and vigorous, where each party's respective counsel represented their clients' interests zealously.

Preliminary settlement negotiations began in September 2019. *See* Kaplan Decl., ¶ 2. In the first instance, the parties worked to establish the contours of a potential class and the volume of commerce for Keurig K-Cup Portion Packs across the country. *See id.* Over the course of these discussions, Plaintiffs' Interim Co-Lead Counsel made multiple demands and received an offer of settlement from Keurig. *See id.* Then, in early 2020, the parties engaged an experienced mediator, Judge Farnan, to assist them in the process. *See* Kaplan Decl., ¶ 3. On May 8, 2020, the parties had a full-day mediation via video conference attended by Keurig executives and counsel for the respective parties. See *id.* This mediation involved face-to-face discussions with Judge Farnan and face-to-face discussions between the parties. *See id.* The mediation was not

---

[5] Neither the Plaintiff nor Settlement Class Counsel have any interest or involvement in the governance or operation of Consumer Reports, the *cy pres* proposed recipient.

successful.  Over the ensuing months, the parties continued to engage with Judge Farnan.  *See* Kaplan Decl., ¶ 4.  With the help of Judge Farnan, the parties continued extensive, arm's-length discussions despite the challenges of the ever-changing landscape during the emergence of the COVID-19 pandemic and continued prosecution of the Actions as fact discovery came to a close on June 17, 2020.  *See id*.  After the close of fact discovery, Judge Farnan continued to work with the parties with an aim towards resolving the Actions.  *See id*.  On July 21, 2020, the parties accepted Judge Farnan's recommendation and reached a settlement in principle, the substance of which is now memorialized in the Agreement, Exhibit 1- to the Kaplan Declaration.  *See* Kaplan Decl., ¶ 5.

## III.    MATERIAL TERMS OF THE PROPOSED SETTLEMENT

### A.    Monetary Relief

#### 1.    The Settlement Amount

The proposed settlement provides for a settlement fund in the amount of $31 million ("Settlement Fund").  Within fourteen days of preliminary approval of the settlement, Defendant will advance $250,000 into an escrow account.  *See* Kaplan Decl., Ex. 1 at ¶ 38.  Defendant will provide the balance of the funds on January 6, 2021.[6]  After deduction of any attorneys' fees, expenses, and service awards to Plaintiffs, as and if awarded by the Court, the remaining Settlement Fund will be distributed at the Court's direction upon the finality of the settlement in a distribution consistent with the proposed Plan of Allocation.   None of it will revert to Defendants following administration of the claims process.  *Id*. at ¶ 48.

---

[6] The costs of class notice, claims administration, and Plaintiffs' attorneys' fees (as awarded by the Court) will be paid from the Settlement Fund.

### 2. Release

When the proposed settlement becomes final, all class members who do not opt out of the settlement will release Keurig and all of its predecessors, past, current, or former subsidiaries, parents, affiliates, joint venturers, officers, directors, employees, shareholders, agents, administrators, insurers, attorneys, and successors and assigns of each of the foregoing from all claims, demands, actions, suits, and causes of action, whether class or individual, Plaintiffs have asserted, or could have asserted, in the Actions under federal or state law that are based on a common nucleus of operative fact or similar conduct to any that is at issue in the Actions. *See id.* at ¶ 35.

## IV. THIS COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

### A. The Proposed Settlement Clearly Meets the Standards for Preliminary Approval

The Court undertakes a two-step approach in considering whether to approve a proposed settlement in a class action. The first step is the current motion before the Court: preliminary approval of the proposed settlement, certification of a settlement class, and approval of a proposed notice and claims submission plan. *See* Manual for Complex Litigation (Fourth) § 21.63 (2004). These protect the class by providing them with materials that will allow them to evaluate the settlement and determine whether to submit a claim or comment or object in response to the settlement.

To aid in this notice and claim submission process, Plaintiffs propose that the Court authorize JND to serve as Claims Administrator. Plaintiffs selected JND following a multi-party request for proposals and interview process. JND was the provider that presented the best combination of cost, resources, and experience in administering complex antitrust class-action settlements including: *In re LIBOR-Based Financial Instruments Antitrust Litigation*, Case No.

1:11-md-2262-NRB (S.D.N.Y.); *Beltran v. InterExchange, Inc.*, Case No. 14:cv-03074-CMA-MT (D. Colo.); *In re Broiler Chicken Antitrust Litig.*, Case No. 16-cv-08637 (N.D. Ill.); *In re Resistors Antitrust Litigation*, Case No. 3:15-cv-03820-JD (N.D. Cal.); *In re Pre-Filled Propane Tank Antitrust Litigation*, Case No. 14-md-02567 (W.D. Mo.); *Kent v. R.L. Vallee, Inc.*, Case No. 617-6-15 (Super. Ct. Vt.).   JND's founders, Jennifer Keough, Neil Zola, and David Isaac were previously lawyers doing settlement claims work and collectively have over 75 years of experience in the legal claims administration industry, including extensive experience within the Second Circuit.  *See* Intrepido-Bowden Decl., ¶ 5; *see also Donnenfield v. Petro, Inc*., No. 17-cv-02310 (E.D.N.Y.); *Hanks v. Lincoln Life & Annuity Co. of New York*, No. 16-cv-6399 (PKC) (S.D.N.Y.); *LIBOR*; *Cline v. TouchTunes Music Corp*., No. 14-civ-4744 (LAK) (S.D.N.Y.).

Because the first step of this process is only "preliminary," the standards for preliminary approval are less exacting than those applied to the second step -- final approval.   "[A] court must determine whether the terms of the proposed settlement warrant preliminary approval. In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.,* No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005).  Preliminary approval of a proposed settlement is granted so long as the settlement was arrived at through a fair process and the terms of the settlement are within the "range of *possible* approval."  *NASDAQ I,* 176 F.R.D. at 102 (emphasis added).

A preliminary approval order does not bind the Court to grant final approval of a settlement.  Rather, preliminary approval is merely a ruling that the proposed settlement, as here, "appears to be the product of serious, informed, non-collusive negotiations, has no obvious

deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval[.]"  *In re Initial Pub. Offering. Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).  Thus, preliminary approval merely establishes a presumption of fairness and a determination of whether notice to the class of the terms of the settlement and the schedule for a formal fairness hearing are advisable.  *Id.*

Under revised Rule 23, a district court must consider whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  A preliminary determination that a settlement is presumptively fair is proper when the Court finds: "(1) adequacy of representation; (2) the existence of arm's-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class members."  *In re GSE Bonds,* 414 F. Supp. 3d at 692.  These factors in amended Rule 23 were intended to supplement, not displace, traditional Second Circuit analysis based on substantive factors enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  *See GSE Bonds*, 414 F. Supp. 3d at 692.[7]

As described below, the relevant factors support preliminary approval.

---

[7] The Court in *Grinnell* set forth nine factors to determine whether a proposed settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell Corp.*, 495 F.2d at 463.  However, as courts have recognized, there is little to be gained by applying all the *Grinnell* factors at the preliminary approval stage. *See Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 356 n.7 (E.D.N.Y. 2006) ("it is apparent that several of the Grinnell factors themselves were designed for application at a later stage in the class settlement approval process.").  As a result, they are discussed here when they are relevant to assess the settlement's fairness at this preliminary stage.

### B.      The Settlement Is Presumptively Fair

For preliminary approval, the Court "must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion*, 2006 WL 3247396 at *5. Where, as described here, the settlement is achieved through a fair process and the settlement's terms are "within the range of possible approval," the grant of preliminary approval is warranted. *NASDAQ I*, 176 F.R.D. at 102.

### 1.      The Proposed Settlement Is Procedurally Fair Because It Was Achieved Through Extensive Arm's-Length Negotiation with Assistance from an Experienced Mediator

A proposed settlement is presumptively fair because it was negotiated and agreed to by capable counsel with the assistance of an experienced mediator. *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (settlement is entitled to "presumption of fairness" when it is the "product of arm's length negotiation conducted by experienced counsel knowledgeable in complex class litigation.").

On May 8, 2020, the parties engaged in mediation before Judge Farnan, who confirms that the negotiation was *bona fide*, at times contentious, and advocated by sophisticated and capable counsel on both sides, who each displayed a thorough understanding of their side's respective strengths and weaknesses. *See* Kaplan Decl., ¶ 3; Farnan Decl. ¶ 5. The process was much longer than a single mediation session. The parties began discussing resolution in 2019. *See* Kaplan Decl., ¶ 2. After engagement on issues such as the contours of the class and the commerce at issue, the parties determined to mediate and selected a neutral. *See* Kaplan Decl., ¶¶ 2-3; Farnan Decl., ¶ 3. The parties participated in pre-mediation sessions and a day-long mediation session. *See* Kaplan Decl., ¶ 3; Farnan Decl., ¶¶ 4-5. After that session, the mediator began a process of shuttle diplomacy, encompassing numerous, in-depth discussions with each

10

side.  *See* Kaplan Decl., ¶ 4; Farnan Decl., ¶ 6.  On July 21, 2020, after weeks of frequent communications to explore issues and close the gap, the parties reached an agreement in principle to settle the Actions for $31 million, which was later fully memorialized in the Agreement.  *See* Kaplan Decl., ¶ 5; Farnan Decl., ¶ 7.

## 2.    The Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor # 1)

The Actions concern complex issues of both law and fact.  Indeed, the Court may look no further than the briefing on the motion to dismiss, which outlined several disputes regarding the relevant market including channels of distribution, the legality of the alleged anticompetitive conduct, substantial foreclosure of competition, the market share within the relevant market, the existence of a group boycott, agreements concerning supply, manufacture, and distribution, the application of Vermont law, and the effects of the alleged unlawful conduct on indirect purchasers.

Further, complex issues of law and fact are likely to be raised at the class certification stage, and the losing party would likely seek interlocutory review pursuant to Rule 23(f), which would cause delay in resolving the litigation.  *See In re Payment Card Interchange Fee & Merch. Dis. Antitrust Litig.*, 986 F. Supp. 2d 207, 212-13 (E.D.N.Y. 2013), *reversed and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) (noting that "[i]n the Wal-Mart case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision").  A trial in this matter would be lengthy, and any verdict obtained at trial would likely be appealed by the losing party, thereby extending the lawsuit further.  *See Payment Card*, 986 F. Supp. 2d at 212.

Within this Circuit, numerous courts have recognized that "'antitrust cases are complicated, lengthy . . . bitterly fought', as well as costly."  *In re Vitamin C Antitrust Litig.*, No.

11

06-MD-1738 (BMC), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012); *see also Virgin Atl.*

*Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001); *Wal-Mart Stores*, 396

F.3d at 118.  This case is no exception to the rule, and there is "no doubt that this class action

would be enormously expensive to continue, extraordinarily complex to try, and ultimately

uncertain of result."  *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477

(S.D.N.Y. 1998).  Thus, this factor weighs in favor of preliminary approval of the proposed

settlement.[8]

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor # 3)

In rendering an assessment at the preliminary approval stage, the Court inquires as to

"whether the plaintiffs obtained a sufficient understanding of the case to gauge the strengths and

weaknesses of their claims and the adequacy of the settlement."  *In re GSE Bonds*, 414 F. Supp.

3d at 699; *see also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.

2004) ("[T]he question is whether the parties had adequate information about their claims.").

Here, proposed Settlement Class Counsel are sufficiently well-informed, having not only

drafted three thorough consolidated pleadings and survived a motion to dismiss, but also having

completed fact discovery, which included millions of pages of documents by parties and non-

parties, hundreds of depositions, as well as interrogatories.  *See In re Signet Jewelers Ltd. Sec.*

*Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) ("[T]he

Parties and their counsel were well informed about the strengths and weaknesses of the case,"

---

[8] The second *Grinnell* factor takes into account the reaction of the settlement class.  Here, the Settlement Class's reaction cannot be evaluated until after Notice has been disseminated and the Settlement Class's voice has been heard.  *See GSE Bonds*, 414 F. Supp. 3d at 699, n.1 ("[C]onsideration of this factor is generally premature at the preliminary approval stage.").  To the extent the Court does consider the second *Grinnell* factor at this stage, the reaction of the Settlement Class can be ascertained from the thirty Plaintiffs who were regularly updated on the settlement's progress and believe that the settlement is in the best interests of the Settlement Class, and thus the reaction of the Settlement Class weighs in favor of preliminary approval.

because they "had completed fact discovery, which included obtaining and analyzing approximately 3.6 million pages of documents from Defendants and third parties, and taking, defending, or participating in 31 depositions."). Plaintiffs also retained highly qualified and experienced market and damages experts who, prior to the settlement, were engaged in preparing expert reports that Plaintiffs planned to submit in support of Plaintiffs' allegations.

In addition, due to the coordination with efforts of plaintiffs in the Related Actions against Keurig, proposed Settlement Class Counsel had unique insight into the alleged effects of Keurig's alleged anticompetitive conduct. As a result, proposed Settlement Class Counsel had sufficient understanding of the strengths and weaknesses of Plaintiffs' case. Thus, "plaintiffs have adequate information such that preliminary approval of the settlement agreement is warranted." *In re GSE Bonds*, 414 F. Supp. 3d at 699. During the mediation, the parties and the mediator discussed, among other things, the litigation risks that Plaintiffs face in pursuing their claims against Keurig, certification of a litigation class, as well as potential damages and market definition.

Accordingly, at this stage of the litigation, the Plaintiffs are sufficiently informed and aware of the strengths and weaknesses of their case, and as a result, this factor weighs in favor of preliminary approval.

### 4. The Risks of Establishing Liability and Damages (*Grinnell* Factors ## 4, 5)

In considering these factors, "the Court should balance the benefits afforded the Settlement Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Payment Card*, 986 F. Supp. 2d at 224. Regarding liability, this is a case with no guilty plea, no leniency applicant, and no federal findings or investigation. Plaintiffs expect Defendant to continue to vigorously contest all elements of Plaintiffs' claims during the

remaining stages of the litigation and in the Related Actions, including at class certification and summary judgment.  The outcome of these proceedings cannot be certain, and in the event that these cases proceeded to trial, it will be a lengthy and complex affair.  Even if Plaintiffs could establish liability, they would still have to prove damages and certify a litigation class. Plaintiffs' theory of damages would be hotly contested, and there is no doubt that, should the case advance to trial, there would be a "battle of the experts."  *Nasdaq*, 187 F.R.D. at 476.  A "battle of the experts" becomes nearly impossible "to predict with any certainty which testimony will be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ."  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).  Thus, there is a real risk that a jury might be persuaded by one or more of Defendant's arguments on damages and, in turn, award far less than the Settlement Amount or nothing at all.  "[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."  *Wal-Mart Stores*, 396 F.3d at 118.  Further, even if Plaintiffs were able to establish liability and damages and achieve a favorable jury verdict, "if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C., v. Nat'l Intergroup, Inc.*, No. 85 CIV 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987).  Thus, the risks of establishing liability and damages weigh in favor of preliminary approval.

**5.     The Risks of Maintaining a Class Through Trial (*Grinnell* Factor # 6)**

While there is risk in maintaining a class through trial in every class action, this factor weighs in favor of preliminary approval where "it is likely that defendants would oppose class certification" if the case were to be litigated.  *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM), 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011).  Even though a class certification

motion has yet to be filed and decided, it is certain the Defendant would vigorously oppose it. In addition, there is little doubt that, if Plaintiffs were successful in certifying a class, including a national class based on Vermont law, Defendant would seek interlocutory appeal under Rule 23(f) of the Federal Rules of Civil Procedure, further delaying the outcome of the Action. Although Plaintiffs believe they would succeed on class certification, Defendant would undoubtedly advance substantive arguments in opposition.  As a result, there is a real risk that this litigation might not be maintained as a class action through trial.  *See, e.g., Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013) (reversing class certification in an antitrust case); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 626 (D.C. Cir. 2019) (affirming denial of class certification where class had strong liability evidence, but lacked economic proof to support certification).  Thus, this factor weighs in favors of preliminary approval.

### 6.    Keurig's Ability to Withstand a Greater Judgment (*Grinnell* Factor # 7)

In a class action proceeding against a large corporation, such as Keurig, the defendant "is likely to be able to withstand a more substantial judgment."  *Vitamin C*, 2012 WL 5289514, at *6.  However, this fact alone does not undermine the reasonableness of the settlement.  *See id.* (finding ability to withstand greater judgment does not undermine reasonableness of settlement).  Indeed, while Keurig is undoubtedly a large corporation and seemingly healthy, the presence and potential impact of the COVID-19 pandemic adds a layer of uncertainty and risk that could adversely affect the Company's financial footing.  Additionally, Keurig is battling other lawsuits from competitors and direct purchasers, which could settle or secure judgment before the indirect purchasers and dilute Keurig's ability to pay a more substantial judgment compared to the Settlement Amount.  Although Keurig may have the ability to withstand a greater judgement, the

result – a $31 million settlement – is still outstanding and weighs in favor of preliminary approval.

>    7.    **The Range of Reasonableness of the Settlement Amount in Light of the Possible Recovery and Attendant Risk of Litigation (*Grinnell* Factors ## 8, 9)**

In seeking preliminary approval from the Court, Plaintiffs have taken into account the estimated damages, the benefits and risks of continuing litigation against Keurig, and the range of possible outcomes in the absence of a settlement. When the Court determines whether a settlement amount is reasonable, the analysis "does not involve the use of a mathematical equation yielding a particularized sum." *Fleisher v. Phoenix Life Ins. Co.,* No. 11-cv-8405 (CM), 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) (quoting *Massiah v. MetroPlus Health Plan, Inc.,* No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012)). Indeed, the Settlement Amount must not be judged "in comparison with the best possible recovery in all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Fleisher*, 2015 WL 10847814, at *8 (quoting *Shapiro v. JPMorgan Chase & Co.*, Nos. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 at *7 (S.D.N.Y. Mar. 24, 2014)).

Although Keurig sold billions of Keurig K-Cup Portion Packs during the relevant period, the damages calculation is extremely complex. During the mediation, Keurig took the position that, after an assessment of risk, damages were *de minimis* and the value of the case was well below the settlement amount. *See* Kaplan Decl., ¶ 3. Accordingly, Plaintiffs submit that the Settlement is well within the range of reasonableness. *See Grinnell*, 495 F.2d at 455 & n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 49 (E.D.N.Y.

2019) (stating that the Second Circuit did not take issue with original settlement recovery of "2.5% of the largest possible estimate of actual damage to [the class]").[9]

The Settlement Amount provides a significant and immediate cash payment to the Settlement Class. *See Gay v. Tri-Wire Eng'g Solutions, Inc.,* 12-cv-2231 (KAM)(JO), 2014 WL 28640, at *9 (E.D.N.Y. Jan. 2, 2014) (quoting *Massiah*, 2012 WL 5874655 at *5) ("When a settlement 'assures immediate payment of substantial amounts to class members even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor.'"); *Sykes v. Mel Harris & Assocs., LLC,* 09 Civ. 8486 (DC), 2016 WL 3030156, at *14 (S.D.N.Y. May 24, 2016) ("[M]uch of the value in the settlement lies in the ability to make funds available promptly."). The proposed settlement will provide "an immediate and certain benefit to" the Settlement Class, and "the substantial burdens and costs that continued and uncertain litigation would impose on the parties, non-party witnesses, and the courts" would be avoided. *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010).

After evaluating the certain recovery of a significant amount against the risks that continuing this litigation presents to the Settlement Class, this factor weighs in favor of preliminary approval.

---

[9] *See e.g., McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *13 (E.D.N.Y. July 30, 2018) (Finding $1.9 million monetary recovery reasonable despite possible recovery in excess of more than $900 million); *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) ("The dollar amount of the settlement by itself is not decisive in the fairness determination. The fact that the settlement may equal but a fraction of potential recovery does not render the settlement inadequate.").

8.      **The Additional Rule 23(e)(2) Factors Support Preliminary Approval**

a)      **Rule 23(e)(3)(A) – Plaintiffs and Settlement Class Counsel Have Adequately Represented the Settlement Class**

Plaintiffs each share the same interest as the Settlement Class: to prosecute the Actions to ensure the greatest recovery from Defendant.  Plaintiffs are part of the Settlement Class and suffered from the same alleged injuries as other Settlement Class Members – paying supra-competitive prices for Keurig K-Cup Portion Packs due to Keurig's alleged anticompetitive conduct that limited competition.  *See Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 348-49 (2011) ("class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members").  Plaintiffs have played an active role in this case's development, prosecution, and settlement including, but not limited to, reviewing pleadings, having their depositions taken, producing documents, and being informed about ongoing mediation and settlement discussions.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 n.25 (2d Cir. 2006) (stating that a class representative "must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.").  Thus, the Plaintiffs are adequate representatives of the Settlement Class for the purposes of settlement and should be appointed as class representatives for settlement purposes. Further, as this Court has already found in appointing them Interim Co-Lead Counsel, proposed Settlement Class Counsel have demonstrated that they are qualified, experienced, and able to conduct this litigation.

b)      **Rule 23(e)(2)(C) – the Monetary Relief Is Adequate, Taking into Account the Costs and Risks of Litigation and All Other Relevant Factors**

To assess whether the relief provided by the settlement is adequate, Rule 23(e)(2)(C) requires the Court to consider:

18

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C)(i-iv).  Plaintiffs previously discussed Rule 23(e)(2)(C)(i) in Section 1V.C.1, 4-5, *supra*.[10]   The remaining Rule 23(e)(2)(C) factors, discussed below, support preliminarily approving the Settlement.

> ### c) Rule 23(e)(2)(C)(ii) – Effectiveness of Any Proposed Method of Distributing Relief to the Class

This factor requires the Court to examine the proposed "method of processing class-member claims."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether [the] claims process is unduly demanding."  Fed. R. Civ. P. 23 Advisory Committee Note (2018).  "[T]he plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate . . . . 'An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'"  *In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).  Numerous courts have held that "a plan of allocation need not be perfect" to warrant court approval.  *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

Settlement Class Counsel respectfully submit that the proposed Plan of Allocation is a fair, reasonable, and adequate method of equitably allocating the Settlement Amount to the Settlement Class Members, who make proper claims.  Under the proposed Plan of Allocation,

---

[10] *Grinnell* factors 1, 4, 5 and 6 are subsumed by Rule 23(e)(2)(C)(i), which analyzes costs, risks, and delay of trial and appeal.  *See Payment Card*, 330 F.R.D. at 36 (noting that this assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial, and considering each Grinnell factor in its analysis.).

the value of a Settlement Class Member's claim will be based upon the purchase price of the affected products adjusted for where the Settlement Class Member's claim accrued and the quality of the proof submitted.  *See* Intrepido-Bowden Decl., Ex. G.  According to the proposed Plan of Allocation, Settlement Class Members will be paid *pro rata* from the Settlement Fund after adjustment in their purchase price, discounted where appropriate based on (a) whether the Settlement Class Member can submit proof of (i) purchases of Keurig K-Cup Portion Packs, or (ii) purchase or registration of a Keurig single-serve brewer, or (iii) no proof of purchase at all and (b) the location where they purchased their Keurig K-Cup Portion Packs.  *See id*.

The Settlement Class Members' location of purchase must be considered because a claim from a non-*Illinois Brick* repealer jurisdiction carries a higher degree of risk than a claim from a jurisdiction that has repealed *Illinois Brick.*  The former claim rests entirely upon certification of a Vermont national class, which could in no way be relied on.  *See Beltran, et al., v. InterExchange, Inc., et al.*, Case No. 1:14-cv-03074-CMA-KMT, 2019 WL 3496692 (D. Colo. Aug. 1, 2019) (granting preliminary approval where the settlement benefit was weighted, in part, on the state in which the claimant was situated); *Townsend v. G2 Secure Staff, L.L.C., et al.,* Case No. 18STCV04429 (unpublished order) (Cal. Super. Ct. L.A. Cnty. July 7, 2020) (weighting a benefit award on the class member's state of residence or where the cause of action accrued in recognition of a potential jurisdictional defense).[11]  Where a claim is supported by proof of purchase of Keurig K-Cup Portion Packs or proof of purchase or registration of a Keurig single-

---

[11] Plans of allocation discounting claims based on their likelihood of success help "ensure equitable treatment for members" of the Class.  *In re Facebook, Inc*., 343 F. Supp. 3d 394, 415 (S.D.N.Y. 2018). Indeed, a "substantial" discount on Settlement Class Members from non-repealer states is reasonable because a "defense is more likely to limit recovery when asserted against" those Settlement Class Members based on where they purchased Keurig K-Cup Portion Packs.  *Id.,* 343 F. Supp. 3d at 415.

serve brewer, it serves as additional evidence of the validity of the claim beyond a statement under penalty of perjury.

To implement the Plan of Allocation and determine the value of Settlement Class Member claims, Settlement Class Counsel developed a Distribution Matrix, which is contained within the Long-Form Notice attached as Exhibit G to the Intrepido-Bowden Declaration.  To ensure that all interests were represented, the Distribution Matrix was reviewed by allocation counsel representing claimants from non-repealer jurisdictions ("Allocation Counsel").  When both sets of counsel reached an impasse, Settlement Class Counsel and Allocation Counsel enlisted Judge Farnan to resolve the dispute.  Following a mediation session and argument, Judge Farnan found that the Plan of Allocation and Distribution Matrix appropriately treated Settlement Class Member claims differently based on the rights provided by state laws and that the matrix values were fair and reasonable and provided an adequate allocation.  *See* Farnan Decl. ¶¶ 10-12; Intrepido-Bowden Decl., Ex. G.  However, a Settlement Class Member's share of the Settlement Amount cannot be calculated until all claims are submitted, when a claim will receive its share of the Settlement Fund based on its share of all claims after adjustment under the matrix.[12]

Thus, the proposed Plan of Allocation is fair, reasonable, and adequate and warrants preliminary approval.

---

[12] It is possible that there may be a reasonable minimum threshold to ensure that the administrative costs of issuing small payments do not deplete the Settlement Fund. *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007) (approving a *de minimis* threshold in order to "save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs"); *In re Glob. Crossing Sec.*, 225 F.R.D. at 463 (same); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 CIV. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (approving $25 minimum payment); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497-498 (S.D.N.Y. 2009) (approving $10 minimum payment).

**d)   Rule 23(e)(2)(C)(iii) – the Terms of Any Proposed Award of Attorneys' Fees**

Settlement Class Counsel will apply for an award of attorneys' fees and expenses and any service awards to Plaintiffs in conjunction with the motion for final approval of settlement. Although the exact amount has not been determined, Settlement Class Counsel will not apply for fees in excess of 33-1/3% of the Settlement Fund plus payment of litigation expenses and costs and any service awards to Plaintiffs.   Such a request for attorneys' fees is reasonable in comparison to other common-fund settlements in cases of similar size and complexity.   *See In re J.P. Morgan Stable Value Fund ERISA Litig.,* No. 12-CV-2548 (VSB), 2019 WL 4734396, at *6 (S.D.N.Y. Sep. 23, 2019) (approving 33-1/3% fee request of $75 million common settlement fund); *In re Platinum & Palladium Commodities Litig.,* No. 10cv3617, 2015 WL 4560206, at *5 (S.D.N.Y. July 7, 2015) (approving 33-1/3% fee request of approximately $12 million common settlement fund); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262 (RWS), 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (noting "scores of common fund cases where fees . . . were awarded in the range of 33-1/3% of the settlement fund."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146-47, 149 (S.D.N.Y. 2010) (approving 33.33% fee from $50 million common fund recovery); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *8 (33% fee request of $39 million common fund was reasonable).   The Agreement provides that Settlement Class Counsel will receive any applied-for fees and expenses only upon this Court's order regarding attorneys' fees and costs.

**e)   Rule 23(e)(2)(C)(iv) – Any Agreement Required to Be Identified Under Rule 23(e)(3).**

There are no agreements to be identified pursuant to Rule 23(e)(3).

  **f)**  **Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to Each Other**

The Rule 23(e)(2)(D) factor "could include whether the apportionment of relief among the class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 2018 Advisory Committee Note. Pursuant to the Plan of Allocation, Settlement Class Members will receive their share of the recovery based on the evidence of their purchases that they can produce as well as the strength of their claim. *See* Intrepido-Bowden Decl., Ex. G. Further, the Release treats all Settlement Class Members equitably relative one another. Subject to Court approval, all Settlement Class Members will be giving Keurig the same release, which arises directly from the factual predicate of the Actions. Kaplan Decl. Ex. 1 ¶ 35.

**V.**  <u>**CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED**</u>

  **A.**  **The Settlement Class Meets the Requirements of Rule 23(a)**

A court may certify a class for settlement purposes where the proposed settlement class meets the Rule 23(a) requirements for class certification, as well as the requirements of one of the subsections of Rule 23(b). *See In re Am. Int'l Grp. Inc. Sec. Litig*, 689 F.3d 229, 242 (2d Cir. 2012).

Under Rule 23(a), the Court can certify a class for settlement if the plaintiff demonstrates numerosity, commonality, typicality, and adequacy of the class plaintiffs. Here, Plaintiffs seek certification of the following Settlement Class:

> All individuals and entities in the United States and its territories that purchased Keurig K-Cup Portion Pack from persons other than Keurig and not for the purpose of resale, during the period September 7, 2010, to August 14, 2020 (except for claims under Mississippi law—which are for purchases during the period from March 14, 2011, to August 14, 2020, and Rhode Island law—which are for purchases from July 15, 2013, to August 14, 2020). Excluded from the Settlement Class are Keurig and its predecessors,

subsidiaries, parents, affiliates, joint venturers, and their directors and executive officers, and parties to any supply, retail, or distribution contracts with Keurig relating to Keurig K-Cup Portion Packs or Keurig Brewers, as well as all federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, any judge or jurors assigned to this case, and Judge Farnan.

For settlement purposes, the Settlement Class satisfies the requirements of Rule 23(a).[13]

### 1.   Settlement Class Members Are So Numerous that Joinder Is Impracticable

Numerosity is readily satisfied by the proposed Settlement Class.  The Settlement Class likely consists of hundreds of thousands of indirect purchasers spread across the United States. *See Mayhew v. KAS Direct, LLC*, No. 16 cv 6981 (VB), 2018 WL 3122059, at *4 (S.D.N.Y. June 26, 2018).  This Court has found that Rule 23(a)(1) is satisfied by "a class consisting of forty or more members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### 2.   There Are Questions of Law and Fact Common to All Settlement Class Members

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This threshold is satisfied if the question is "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Store*s, 564 U.S. at 350.  "[A] single [common] question will" satisfy the commonality inquiry.  *Id*. at 359.  Keurig's alleged behavior underlies all the claims asserted by the Indirect Purchaser Plaintiffs here.  *See In re Buspirone Patent Litig.*, 210 F.R.D. 43, 57 (S.D.N.Y. 2002) (recognizing commonality among proposed class regarding "whether [defendant] engaged in the anticompetitive conduct alleged, the scope of this conduct and whether this conduct resulted in any overcharge in the market…"); *All*

---

[13] Keurig has agreed to this definition for settlement purposes only.  *See* Agreement ¶¶ 27-28, 33; *see also, e.g.*, *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 327 F.R.D. 483, 490 (S.D.N.Y. 2018) (adopting language like that proposed by the parties here preventing the use of the settlement agreement for other purposes).

*Indirect Purchaser Actions v. Infineon Techs. AG (In re Dynamic Random Access Memory Antitrust Litig.)*, No. M-02-1486-PJH, 2013 WL 12333442, at \*37 (N.D. Cal. Jan. 8, 2013) ("The commonality requirement is satisfied when there are questions of law or fact common to the class."); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 407 (M.D. Fla. 2018) ("Where a complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met.").  Additionally, there are common, class-wide questions about the appropriate measure of damages.

### 3.   Plaintiffs' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that "the claims or defense of the representative parties are typical of the claims or defenses of the class."  The standard is satisfied when "'each [class] member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1282293, at \*12 (S.D.N.Y. Mar. 28, 2014) (citing *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)).  Variations in state laws "'are irrelevant to certification of a settlement class' since a settlement would eliminate the principal burden of establishing the elements of liability under disparate laws."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) (citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) (citations omitted); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 609 (W.D.N.Y. 2011) ("state-law distinctions impact trial manageability, which is relevant principally with respect to litigation at trial") (citing *Warfarin*, 391 F.3d at 529–30; *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 92 n.33 (D. Mass. 2005) ("differences in the state consumer protection laws" implicate manageability concerns and do not pose an obstacle to certification of a settlement class).

Plaintiffs' claims are typical of those of the Settlement Class because Plaintiffs allege the same unlawful course of conduct harmed all Settlement Class Members.  Further, any difference that may exist in amount of injury suffered by each Settlement Class Member does not preclude a finding of typicality.  *See In re Playmobil Antitrust Litig.,* 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998); *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998).

### 4.     The Settlement Class Is Fairly and Adequately Represented

As discussed previously in Section IV.D.1, *supra*, Plaintiffs and Settlement Class Counsel have fairly and adequately represented the Settlement Class.

### B.     The Settlement Class Meets the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), a case can be litigated as a class action if (1) the "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.     Common Questions of Law and Fact Predominate

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc., v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions, §4:49, at 195-96 (5th ed. 2012)).  Predominance is satisfied if resolution of some of the pervasive legal and factual questions of each class member's case "can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *In re U.S. Foodservice Inc., Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013).  Plaintiffs are not required to establish that each element of their claim is susceptible to class-wide proof, rather plaintiffs need only show "'that common questions predominate over any questions affecting only individual [class]

members.'" *In re Petrobras Sec. Litig.* 862 F.3d 250, 268 (2d Cir. 2017) (quoting *Amgen Inc., v. Connecticut Ret. Plans and Trust Funds*, 568 U.S. 455, 469 (2013)).

Here, Plaintiffs' claims arise from Keurig's challenged conduct which would be proven through common evidence. *See In re Buspirone,* 210 F.R.D at 58 ("Proof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs."). The existence and scope of Defendant's alleged anti-competitive conduct can be established through common evidence such as communications and contracts with distributors and retailers, and the deposition testimony of current and former Keurig employees. *See id.* (commonality was satisfied where plaintiff sought "to establish the overcharges to the class and the antitrust injury using evidence that is applicable to the class as a whole…"). This proof will not vary across Settlement Class Members. Rather proof of Keurig's conduct and the overcharges to all class members that allegedly resulted "will focus on the actions of the defendant[], and, as such, proof for these issues will not vary among class members." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 264 (D.D.C. 2002).

Moreover, class-wide impact, causation, and damages can also be demonstrated using common evidence, including expert testimony and modeling that relies on Defendant's transactional data, which is common to all members of the Settlement Class. *See In re Buspirone,* 210 F.R.D. at 58 ("The common damage methodology in this case, added to the other common questions of fact and law, demonstrates common questions of law and fact predominate over any questions affecting only individual members of the class.").

### 2.        A Class Action Is the Superior Method for Resolving This Case

The superiority requirement is satisfied if "the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent

adjudications of similar claims." *Chhab v. Darden Rests., Inc.,* No. 11 Civ. 8345 (NRB), 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016).   At bottom, superiority is a comparison: "courts must ask whether 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Petrobras*, 862 F.3d at 268 (quoting Fed. R. Civ. P. 23(b)). However, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 620 (1997); *Am. Int'l Group*, 689 F.3d at 239-40.

Class litigation is a superior litigation method where, as here, it would be unduly costly for Settlement Class Members to pursue their actions individually because the claim of each Settlement Class Member is relatively small.   *See Elec. Books*, 2014 WL 1282293, at *22 (citing *Amchem*, 521 U.S. at 617).   Additionally, Settlement Class Members are numerous and geographically disbursed, which makes a "class action the superior method for the fair and efficient adjudication of the controversy."   *In re Currency Conversion Fee Antitrust Litig.,* 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

### C.    The Court Should Appoint Interim Co-Lead Counsel as Settlement Class Counsel

"An order that certifies a class . . . must appoint class counsel under Rule 23(g)."  Fed. R. Civ. P. 23(c)(1)(B), 23(g)(1)(A)(i)-(iv).  This Court has previously appointed the firms of Kaplan Fox, Pearson Simon, and Wolf Haldenstein as Interim Co-Lead Counsel.  ECF No. 36.  Since that time, the firms have competently and thoroughly litigated the actions in accord with the responsibilities bestowed on them by the Court.  Proposed Settlement Class Counsel have briefed and successfully opposed, in part, Defendant's motion to dismiss; engaged in discovery that consisted of hundreds of depositions, millions of pages of documents, a multitude of discovery disputes; retained and worked with highly qualified, experienced economic experts in

anticipation of filing expert reports in support of Plaintiffs' claims; and drafted and filed three detailed pleadings during a litigation that has spanned more than six years. Accordingly, Plaintiffs request that Kaplan Fox, Pearson Simon, and Wolf Haldenstein be appointed as Settlement Class Counsel.

## VI.   THE PROPOSED MANNER OF NOTICE IS THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES

Rule 23(e)(1)(B) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Where, as here, a settlement class is to be notified under Rule 23(b)(3), the Court must "direct to class members the best notice that is practicable under the circumstance[s]." Fed R. Civ. P. 23(c)(2)(B). The adequacy of a settlement notice "is measured by reasonableness." *Wal-Mart Stores*, 396 F.3d at 113.

Together with JND, Plaintiffs have crafted a Notice Plan, which is the best notice practicable under these circumstances. *See* Intrepido-Bowden Decl., ¶ 12; Ex. B. The Notice Plan includes an extensive 8-week media campaign, which includes the leading digital network (Google Display Network), the top social media site (Facebook), and top business social network (LinkedIn). *See* Intrepido-Bowden Decl., ¶¶ 22-25. The ads will directly link the Settlement Class to a settlement website where they may review information about the case and settlement or file an online claim. *See* Intrepido-Bowden Decl., ¶ 12; Ex. B. Further, Plaintiffs propose to publish a summary notice to the Class via national electronic publication through *Cision PRNewsWire* (the "Summary Notice"). *See* Intrepido-Bowden Decl., ¶¶ 29; Ex. F. The Summary Notice will direct the Settlement Class to the settlement website, where they will be able to find a long-form notice (the "Notice") and the Claim Form (collectively with the Notice, the "Notice Pack"). *See* Intrepido-Bowden Decl., ¶¶ 12, 25, 27-28, 30-31, Exs. B, E, F & G. The settlement website will also contain additional information and pertinent materials about the

lawsuit including the Agreement, the operative complaint, the orders on the motions to dismiss and for reconsideration, and the distribution matrix. *See* Intrepido-Bowden Decl., ¶¶ 30-31. The Notice Plan will also include a half-page publication in *People* magazine, a weekly publication with a circulation of over 3.4 million and a total audience of over 34.9 million. *See* Intrepido-Bowden Decl., ¶¶ 26-27, Ex. D.

The proposed Notice Plan is the best notice practicable under the circumstances because Keurig's sales to indirect purchasers traveled through a chain of commerce and distribution channels such that limited information regarding the identity of indirect purchasers is available. Courts have recently acknowledged that, under similar circumstances, a notice plan such as that proposed is sufficient and the best notice practicable. *See Langan v. Johnson & Johnson Consumer Companies, Inc.,* No. 3:13-cv-01471, ECF No. 188 (Unpublished Order) (D. Conn. Feb. 2, 2019) (granting preliminary approval of settlement with digital ad and social media campaign); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2020 WL 511953, at *11 (N.D. Cal. Jan. 31, 2020) ("Given that direct notice appears to be infeasible, the third-party settlement administrator will implement a digital media campaign[.]"); *Roes v. SFBSC Management, LLC*, 944 F.3d 1035 (9th Cir. 2019) (reversed approval of class action notice program because the plan did not include electronic notice); *Warciak v. One, Inc.*, No. 2018-CH-06254, 2018 Ill. Cir. LEXIS 9002, at *2 (Ill. Cir. Ct. Oct. 3, 2018) (A digital campaign that "included an online media campaign and the creation of the Settlement Website, constituted the best notice practicable under the circumstances[.]").[14] Accordingly, Plaintiffs respectfully request that the Court approve the proposed manner of effectuating notice to the Settlement Class.

---

[14] Courts in this Circuit have acknowledged that individual notice is not necessary. *See Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1987) (Publication "adequately served to notify class members that a potential compromise had been reached."); *see also New York by Vacco v. Reebok Int'l*, 903 F. Supp. 532, 533 n.1 (S.D.N.Y. 1995) (Publication notice was the best notice practicable "given the

## VII.    THE FORMS OF NOTICE ARE REASONABLE

The proposed Notice exceeds the requirements of Rule 23(c)(2)(B) because it provides Settlement Class Members, in "plain, easily understood language," with descriptions of the nature of the Actions, including the claims and defenses at issue; the definition of the Settlement Class; how and when to object and opt out; and the binding effect of the judgment, if the Court approves the settlement.   Notice will be achieved through an extensive 8-week digital media campaign utilizing Google, Facebook and LinkedIn to reach the Settlement Class across the desktop, laptop, tablet and mobile platforms.   *See* Intrepido-Bowden Decl., ¶ 22.   Further, the Summary Notice will be widely disseminated via a national press release.   *See* Intrepido-Bowden Decl., ¶ 29, Ex. F.[15]   Accordingly, Plaintiffs respectfully request that the Court approve the proposed forms of notice.

## VIII.    THE COURT SHOULD APPOINT JUDGE FARNAN AS SPECIAL MASTER

The settlement was achieved through the tireless efforts of Joseph Farnan Jr., retired United States District Judge.   Through a mediation process that lasted for months and that involved extensive pre- and post-mediation discussions and a long process of shuttle diplomacy, Judge Farnan was instrumental in achieving common ground not only as to the size of the overall settlement, but on every material term of the resolution.   Therefore, Judge Farnan is ideally positioned to resolve any issues or disagreements concerning the settlement, the notice, or the allocation program.   The parties have agreed that any costs associated with his service in this

---

enormous number of potential class numbers who had purchased products, the lack of warranty cards to identify customers and the high costs of individual notice."); *Katz v. ABP Corp.*, No. 12-CV-04173 (ENV) (RER), 2014 WL 4966052, at *4 (E.D.N.Y. Oct. 3, 2014) (Granting preliminary approval with notice via national and regional publication).   Likewise, courts nationally have found notice can be sufficient even where there is no direct component.   *See In re Pokémon Go Nuisance Litigation*, Case No. 3:16-cv-04300, ECF No. 131 (N.D. Cal. May 2, 2019); *Holt, et al., v. Murphy Oil USA*, 17-cv-00911-RV-HTC, ECF No. 24 (N.D. Fla. Mar. 18, 2019).

[15] Plaintiffs can begin to effectuate the Notice Plan within 14 days of the Preliminary Approval Date.

capacity shall be borne equally by the Settlement Class and Keurig, reducing the burden of any dispute resolution as compared with other common methods and possibly eliminating the need to bring any dispute before the Court on a contested basis.   Accordingly, in the interest of efficiency, Plaintiffs and Keurig request the appointment of Judge Farnan as special master to make recommendations to the Court, if necessary, regarding the settlement, the notice, and the allocation program.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order preliminarily approving the settlement, certifying the Settlement Class, appointing Interim Co-Lead Counsel as Settlement Class Counsel, appointing the Plaintiffs as Settlement Class Representatives, appointing JND as claims administrator, appointing Signature Bank N.A. as escrow agent, authorizing notice to the Settlement Class, and appointing Judge Farnan as Special Master to make recommendations to the Court regarding the settlement, notice, and allocation program.

Dated: September 30, 2020

/s/ Robert N. Kaplan
Robert N. Kaplan
Gregory K. Arenson
Hae Sung Nam
Jason A. Uris
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY  10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7114
RKaplan@kaplanfox.com
GArenson@kaplanfox.com
hnam@kaplanfox.com
juris@kaplanfox.com

/s/ Mark C. Rifkin
Mark C. Rifkin
Thomas H. Burt
Patrick Donovan
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone:  (212) 545-4600
Facsimile:  (212) 646-0114
Rifkin@whafh.com
Burt@whafh.com
Donovan@whafh.com

/s/ Clifford H. Pearson
Clifford H. Pearson
Daniel L. Warshaw
Matthew A. Pearson
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
Telephone:  (818) 788-8300
Facsimile:  (818) 788-8104
CPearson@pswlaw.com
DWarshaw@pswlaw.com
MaPearson@pswlaw.com

*Proposed Settlement Class Counsel*